THOMAS A. ATWATER *vs.* COMMISSIONER OF EDUCATION
& another.[1]

Essex. September 7, 2011. - November 21, 2011.

Present: IRELAND, C.J., SPINA, CORDY, GANTS, DUFFLY, & LENK, JJ.

*School and School Committee,* Termination of employment, Professional
teacher status, Arbitration. *Education Reform Act. Constitutional Law,*
Separation of powers, Education. *Arbitration,* School committee, Authority
of arbitrator, Conduct of proceedings, Vacating award, Judicial review.

Overview of the statutory framework of the Education Reform Act of 1993,
and discussion of the scope of judicial review of an arbitrator's decision
under G. L. c. 71, § 42. [846-849]

This court concluded that G. L. c. 71, § 42, of the Education Reform Act of
1993 does not impermissibly delegate to a private individual a judicial
function or deny meaningful judicial review, where the statute's provision
authorizing arbitration of a principal's or superintendent's decision dismiss-
ing a teacher with professional teacher status constitutes a legislative judg-
ment that does not interfere with core judicial functions, and where the
scope of judicial review set forth in the statute permits meaningful judicial
review such that there is no violation of the separation of powers doctrine
established in art. 30 of the Massachusetts Declaration of Rights. [853-857]

In a civil action brought by a teacher with professional teacher status chal-
lenging an arbitrator's decision affirming the teacher's dismissal for conduct
unbecoming a teacher, the Superior Court judge properly entered summary
judgment in favor of the defendants confirming the award, where, with
respect to two claims, the arbitrator did not improperly frame the issue for
arbitration [857-858] and there was no pervasive unfairness inherent in the
arbitrator's consideration of the investigation conducted by the superinten-
dent of the school district [858-859]; and where, with respect to a third
claim, the teacher failed to present evidence sufficient to raise a genuine
issue of material fact as to an allegation of misconduct or bias on the part
of the arbitrator, or as to prejudice to the teacher [859-861].

CIVIL ACTION commenced in the Superior Court Department on
August 4, 2006.

The case was heard by *Maureen B. Hogan,* J., on motions for
*summary judgment.*

[1]Manchester Essex Regional School District (district).

The Supreme Judicial Court granted an application for direct appellate review.

*Garrick F. Cole* (*Gerard A. Butler, Jr.*, with him) for the plaintiff.

*Amy Spector*, Assistant Attorney General, for Commissioner of Education.

*Geoffrey R. Bok* (*Colby C. Brunt* with him) for Manchester Essex Regional School District.

*Matthew D. Jones*, for Massachusetts Teachers Association, amicus curiae, submitted a brief.

*Michael J. Long, Joshua R. Coleman, & Stephen J. Finnegan*, for Massachusetts Association of School Committees, Inc., & another, amici curiae, submitted a brief.

IRELAND, C.J. The plaintiff, Thomas A. Atwater, a teacher with professional teacher status,[2] was dismissed by the superintendent of the Manchester Essex Regional School District (district) for multiple instances of conduct unbecoming a teacher. Atwater sought review of the dismissal by filing with the Commissioner of Education (commissioner) a petition for arbitration pursuant to G. L. c. 71, § 42, fourth par., as appearing in St. 1993, c. 71, § 44, the Education Reform Act of 1993 (act). After conducting several days of evidentiary hearings, the arbitrator issued a decision affirming the dismissal. Thereafter, Atwater unsuccessfully sought to vacate the award pursuant to G. L. c. 150C, § 11. Atwater appealed, and we granted his application for direct appellate review. Atwater argues that G. L. c. 71, § 42, which compels arbitration of a wrongful dismissal claim made by a public school teacher with professional teacher status, violates art. 30 of the Massachusetts Declaration of Rights[3] because it impermissibly delegates to a private individual (an arbitrator) a judicial function and denies meaningful judicial

---

[2] The term "professional teacher status" is defined in G. L. c. 71, § 41, and was formerly referred to as "tenure." See *School Dist. of Beverly* v. *Geller*, 435 Mass. 223, 226 (2001) (*Geller*) (Cordy, J., concurring).

[3] Article 30 of the Massachusetts Declaration of Rights reads: "In the government of this Commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

review. Atwater also contends that, pursuant to G. L. c. 150C, § 11, the arbitration award should be vacated because the arbitrator acted in excess of her authority, engaged in misconduct, and exhibited bias against him. We affirm.

1. *Statutory framework.* We begin with an overview of the relevant statutory framework, which will assist in understanding the background of the case. The act made significant changes to the structure and funding of the Commonwealth's public school system. See *Hancock* v. *Commissioner of Educ.*, 443 Mass. 428, 432 (2005) (Marshall, C.J., concurring). The changes were enacted to ensure "(1) that each public school classroom provides the conditions for all pupils to engage fully in learning as an inherently meaningful and enjoyable activity without threats to their sense of security or self-esteem, (2) a consistent commitment of resources sufficient to provide a high quality public education to every child, (3) a deliberate process for establishing and achieving specific educational performance goals for every child, and (4) an effective mechanism for monitoring progress toward those goals and for holding educators accountable for their achievement." G. L. c. 69, § 1, as appearing in St. 1993, c. 71, § 27. G. L. c. 69, § 1A, as appearing in St. 1993, c. 71, § 28. "To further these goals, statutory changes were made to the statute governing teacher demotions and dismissals, G. L. c. 71, § 42." *School Dist. of Beverly* v. *Geller*, 435 Mass. 223, 225 n.1 (2001) (*Geller*) (Cordy, J., concurring). "These changes included (1) transferring from school committees to school principals and superintendents the responsibility for dismissing teachers; (2) expanding the statutorily enumerated grounds for dismissal to include failure to satisfy teacher performance standards, and changing the catchall ground from other 'good' cause to other 'just' cause; (3) depoliticizing and streamlining the dismissal process by requiring that contested dismissals proceed directly to arbitration, where timelines for decisions and detailed statements of supporting reasons are mandated; (4) providing for limited rather than de novo review of dismissal decisions (as confirmed or not by arbitration) in the Superior Court; and (5) requiring arbitrators specifically to take into account the best interests of students and the need for the elevation of performance standards in determining whether a

school district has met its burden of proving grounds for dismissal." *Geller, supra* (Cordy, J., concurring).

More particularly, under the statute pertaining to teacher dismissals, G. L. c. 71, § 42 (statute), a teacher with professional teacher status, such as Atwater, "shall not be dismissed except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure on the part of the teacher to satisfy teacher performance standards . . . or other just cause." G. L. c. 71, § 42, third par. The procedure for review of a teacher dismissal decision provides:

> "A teacher with professional teacher status may seek review of a dismissal decision within thirty days after receiving notice of his dismissal by filing a petition for arbitration with the commissioner.[4] The commissioner shall forward to the parties a list of three arbitrators provided by the American Arbitration Association [AAA]. Each person on the list shall be accredited by the National Academy of Arbitrators. The parties each shall have the right to strike one of the three arbitrators' names if they are unable to agree upon a single arbitrator amongst the three. The arbitration shall be conducted in accordance with the rules of the [AAA] to be consistent with the provisions of this section. . . . The board of education shall determine the process for selecting arbitrators for the pool. The fee for the arbitration shall be split equally between the two parties involved in the arbitration."

*Id.* at § 42, fourth par. Each of the parties at the arbitral hearing may be represented by counsel, present evidence, and call witnesses. *Id.* at § 42, fifth par. The school district "shall have the burden of proof." *Id.* "In determining whether the district has proven grounds for dismissal consistent with this section,

---

[4]Prior to the repeal by the Education Reform Act of 1993, see St. 1993, c. 71, § 49, a dismissed teacher "within thirty days after such vote [of dismissal]" was permitted to "appeal therefrom to the superior court in the county in which the person was or is employed." G. L. c. 71, § 43A, as amended through St. 1988, c. 154, § 9. A Superior Court judge was required to "hear the cause de novo, review such action, and determine whether or not upon all the evidence such action was justifiable." G. L. c. 71, § 43A, as amended by St. 1977, c. 671. "The decision of the court shall be final, except as to matters of law." G. L. c. 71, § 43A, as appearing in St. 1975, c. 337.

the arbitrator shall consider the best interests of the pupils in the district and the need for elevation of performance standards." *Id.* Following the hearing, the arbitrator is required to issue a "detailed statement of the reasons for the decision." *Id.* at § 42, sixth par. "The arbitral decision shall be subject to judicial review as provided in [G. L. c. 150C, concerning collective bargaining agreements to arbitrate]." *Id.* "With the exception of other remedies provided by statute, the remedies provided hereunder shall be the exclusive remedies available to teachers for wrongful termination." *Id.* "The rules governing this arbitration procedure shall be the rules of the [AAA] as pertains to arbitration." *Id.*

As indicated, the scope of judicial review of the arbitrator's decision is limited by G. L. c. 71, § 42, which in turn relies on the standard set forth in G. L. c. 150C. Under G. L. c. 150C, § 11 (*a*), a Superior Court judge "shall vacate" an arbitrator's award on a party's application if, among other enumerated grounds:

> "(1) the award was procured by corruption, fraud or other undue means;

> "(2) there was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;

> "(3) the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law."

"Absent proof of one of the grounds specified in G. L. c. 150C, § 11 (*a*), a reviewing court is 'strictly bound by the arbitrator's factual findings and conclusions of law, even if they are in error.' " *School Comm. of Lowell* v. *Robishaw*, 456 Mass. 653, 660 (2010), quoting *School Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. 753, 758 (2003). We, however, have carved out an exception to the narrow scope of judicial review of arbitration awards by permitting a reviewing court to overrule an award on the ground that it conflicts with public policy. See *Geller, supra* at 237-238 (Ireland, J., concurring), and cases cited. See *Lawrence* v. *Falzarano*, 380 Mass. 18, 28

(1980) (arbitrator may not award relief of nature that offends public policy).

2. *Background.*[5] a. *Atwater's dismissal.* In February of 2005, Atwater was a teacher with professional teacher status at Manchester Essex Regional Middle High School, where he also served as the coach of the girls' varsity basketball team. On March 10, 2005, the district's superintendent sent Atwater a letter notifying him of the superintendent's intent to dismiss Atwater from his position based on the superintendent's investigation of a reported incident that occurred at Atwater's home in February, 2005, between Atwater and a female student, whom Atwater coached. The superintendent attached various documents to the notice of intent, including the superintendent's summaries of statements made to him from the student, one of the student's friends, and a teacher, regarding the incident or the student's recollection of it; a letter placing Atwater on administrative leave; the district's harassment and sexual harassment policy[6]; an affidavit signed by Atwater during a meeting with the student's uncle (who is a lawyer); and a series of electronic mail messages (e-mails) from Atwater to the student between February 18 and February 25, 2005. In addition, in his letter, the superintendent offered to meet with Atwater to give him an opportunity to respond to the charges and to provide any additional information, but Atwater declined.

In a letter dated March 16, 2005, after "having considered all of the information available to [him], and having reviewed the documents included with the [notice of intent]," the superintendent listed nine findings of fact that constituted "conduct unbecoming a teacher," each of which he concluded represented an independent basis for dismissal. The findings were as follows:

"1. On February 23, 2005, you used your position as a coach of the basketball team to lure an individual student into [having] a sleepover at your house.

"2. On the evening of February 23, 2005, at your house

---

[5]The background is primarily taken from the Superior Court judge's opinion. Some undisputed facts from the record have been included.

[6]The district's sexual harassment policy prohibits "unwelcome touching of a person or clothing."

you inappropriately touched the student, touching her back, reaching down her shirt, and touching her buttocks in a sexual manner as well as hugging the student in an attempt to restrain her from leaving.

"3. On February 23 and into February 24, 2005, you made numerous attempts to contact the student via e-mail, via phone and through her friends in order to reestablish a personal relationship.

"4. On February 24, 2005, you visited the student's house twice without prior invitation and used your position as a coach and teacher to gain access to the student.

"5. You used your position as coach to have the student do personal favors for you on two occasions i.e. give you a ride from your mechanic and help you return equipment to the school.

"6. On February 25, 2005, you followed the student in your car and blocked her in at the local gas station. You approached her car window in an effort to converse with her about your personal relationship.

"7. On several occasions, you sent e-mail messages to the student from your school-assigned e-mail address, the content of which were not appropriate communications for a teacher to student or from a coach to his player.

"8. Your conduct was a manifestation of your inability to keep appropriate professional boundaries on your relationships with your students and players.

"9. Your conduct was predatory in nature and has put students in fear for their safety."

The superintendent found that Atwater's conduct was "in violation of the school district's policy on sexual harassment and as such constitute[d] conduct unbecoming a teacher and other just cause for dismissal." Based on his findings, the superintendent concluded that Atwater was "dismissed from the position of teacher . . . effective immediately."

b. *The arbitration proceeding and decision.* Atwater sought review of the dismissal by filing with the commissioner a peti-

tion for arbitration. After being selected in accordance with
G. L. c. 71, § 42, fourth par., the arbitrator conducted a hearing
over the course of five days between December, 2005, and
March, 2006. On the third day of arbitration, February 8, 2006,
after Atwater's attorney had completed his direct examination
of Atwater, the district proposed a settlement offer to Atwater
through his counsel, which included an offer of the district to
allow Atwater and his counsel to have a private ex parte com-
munication with the arbitrator regarding her impression of the
case at the close of Atwater's testimony. The attorneys for the
district, together with Atwater's counsel, then conferred with
the arbitrator. The conference was not recorded. The attorneys
informed the arbitrator that they were involved in settlement
discussions, which involved a proposal that she meet privately
with Atwater and his attorneys and give them her view of the
evidence up to that point. The two attorneys for Atwater later
testified at depositions that they recalled that the arbitrator
agreed that she would recuse herself if the case did not settle
and either side requested (after the private meeting) that she re-
cuse herself. In contrast, the two attorneys for the district, as
well as the arbitrator, testified that the parties had agreed that
the arbitrator would *not* have to recuse herself if the matter did
not settle after the private meeting.

After the conference on how to proceed, the arbitrator met
privately with Atwater and his attorneys. She informed them
that, based on the evidence up to that point, she would uphold
the district's decision to dismiss Atwater. She qualified her
statement by informing them that, were she to hear more
evidence, she might "change [her] mind."

After further negotiations with the district, Atwater rejected
the settlement offer and requested a new arbitrator. The request
was referred to the arbitrator, who denied it, stating that she
would continue as the arbitrator as agreed on, and adding that
nothing would prevent her from impartially arbitrating the matter.

On July 5, 2006, the arbitrator issued a ninety-nine page
decision finding that, despite a lack of credibility as to some
aspects of the student's arbitration testimony, the district had
sustained its burden of proof as to all but two of the facts (fact
one and fact nine) on which the superintendent based his findings
that Atwater had engaged in conduct unbecoming a teacher.

Significantly, the arbitrator found that "[b]ased on the evidence presented at the arbitration hearing . . . on the evening of February 23, 2005, while at his house, [Atwater] inappropriately touched [the student] in a sexual manner and . . . hugged her in an attempt to restrain her from leaving." In considering the best interests of the students in determining whether Atwater's conduct warranted dismissal, the arbitrator explained:

> "Inappropriately touching a student, including reaching down her shirt and touching her buttocks in a sexual manner as well as hugging the student in an attempt to restrain her from leaving, constitutes a serious breach of a teacher's responsibility to his students. Students must be able to trust that they will be safe in the presence of their teachers and coaches. They must be able to rely on their teachers and coaches to exercise sound judgment and maintain appropriate boundaries, even when they themselves may be unable to do so. . . . Atwater failed to exercise sound judgment or maintain appropriate boundaries."

In view of the "serious nature" of Atwater's misconduct, the arbitrator concluded that dismissal was not an excessive penalty. She went on to state: "Neither do I find that it would be in the best interests of the students to have him return to the district as a teacher."

c. *Atwater's application to vacate the arbitration award.* Atwater filed a complaint in the Superior Court against the district and the commissioner to vacate the arbitration award pursuant to G. L. c. 150C, § 11. In counts I and II of his complaint, Atwater alleges that the arbitrator, acting in excess of authority and in manifest disregard of the law, conducted the arbitration hearing using an incorrect legal standard. In count III of his complaint, Atwater asserts that the arbitration award should be vacated because the arbitrator engaged in misconduct and exhibited bias, prejudicing Atwater, by her attempt to mediate a settlement at the district's request, and by her refusal to recuse herself from conducting the arbitration after such mediation was unsuccessful.[7]

---

[7]Atwater also raised three Federal claims, including Federal due process claims, which he has reserved for adjudication by the United States District Court for the District of Massachusetts. Thus, these claims are not before us.

The parties filed cross motions for partial summary judgment. In his motion, Atwater asserted an additional challenge to his dismissal and to the arbitrator's decision, namely he requested a declaration that G. L. c. 71, § 42, is unconstitutional, both on its face and as applied to Atwater, because it impermissibly delegates judicial and government power to a private individual (an arbitrator) in violation of art. 30.[8] In a comprehensive decision, the Superior Court judge rejected all of Atwater's claims, allowed the defendants' motion for partial summary judgment, and denied Atwater's motion. The judge entered a judgment dismissing Atwater's complaint against the defendants and confirming the arbitrator's award.

3. *Constitutional challenge.* Atwater contends that G. L. c. 71, § 42, is unconstitutional on its face under the separation of powers doctrine. We note at the outset that "[a] facial challenge to the constitutional validity of a statute is the weakest form of challenge, and the one that is the least likely to succeed." *Blixt* v. *Blixt*, 437 Mass. 649, 652 (2002), cert. denied, 537 U.S. 1189 (2003), citing *United States* v. *Salerno*, 481 U.S. 739, 745 (1987). "A statute so questioned is presumed constitutional." *Blixt* v. *Blixt, supra,* citing *Landry* v. *Attorney Gen.*, 429 Mass. 336, 343 (1999), cert. denied, 528 U.S. 1073 (2000). "A court may interpret a statute to set forth considerations to clarify and specify, and, where necessary, to narrow, the statute's terms in order that it may be held constitutional." *Blixt* v. *Blixt, supra,* and cases cited. "The challenging party bears the burden of demonstrating 'beyond a reasonable doubt that there are no "conceivable grounds" which could support its validity.' " *Gillespie* v. *Northampton, ante* 148, 152-153 (2011), quoting *Leibovich* v. *Antonellis*, 410 Mass. 568, 576 (1991).

Atwater argues that the statute violates art. 30 because it

---

[8]Atwater also asserted that G. L. c. 71, § 42, impermissibly restricts a teacher's right of access to the courts in violation of art. 11 of the Massachusetts Declaration of Rights. Although he has cited to art. 11 in his brief here, he does not develop that argument beyond mere citation. Thus, his treatment of the issue does not rise to the level of acceptable appellate argument and is deemed waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). See, e.g., *Lobisser Bldg. Corp.* v. *Planning Bd. of Bellingham*, 454 Mass. 123, 134 n.15 (2009); *McClure* v. *Secretary of the Commonwealth*, 436 Mass. 614, 615 n.3, cert. denied, 537 U.S. 1031 (2002); *Adoption of Kimberly*, 414 Mass. 526, 536-537 (1993).

impermissibly delegates to a private individual a judicial func-
tion and denies meaningful judicial review. "[T]he exact lines
between what constitutes legislative, executive, and judicial
powers have never been precisely drawn." *Paro* v. *Longwood
Hosp.,* 373 Mass. 645, 656 (1977). "[W]e recognize that an
absolute division of the three general types of functions is nei-
ther possible nor always desirable." *Opinion of the Justices,*
365 Mass. 639, 641 (1974). As correctly noted by Atwater and
the commissioner, most of our cases concerning nondelegation
of power involve a delegation of legislative, not judicial, power.
See, e.g., *Commonwealth* v. *Clemmey,* 447 Mass. 121, 135
(2006); *Blue Cross of Mass., Inc.* v. *Commissioner of Ins.,* 397
Mass. 117, 128 (1986). Atwater, however, does not challenge
the statute on the ground that it effects an unconstitutional
delegation of *legislative* power. Instead, he maintains that the
statute improperly delegates the "judicial" power "to adjudi-
cate," which in this case involves deciding whether a teacher
having professional teacher status may be dismissed. This claim
lacks merit. The statute confers the dismissal decision to a prin-
cipal or superintendent, not to the arbitrator.[9] See G. L. c. 71,
§ 42, first par. Where a teacher's right to continued employ-
ment is created by statute, and not by common law, it necessar-
ily also falls within the Legislature's authority to specify the
grounds under which a teacher may be dismissed, who makes
the dismissal decision, as well as the process for review of that
dismissal decision, such as arbitration followed by limited judicial
review, so long as a teacher's constitutional rights, including
due process rights (which Atwater does not challenge here, see
note 7, *supra*), are not violated. See *Thomas* v. *Union Carbide
Agric. Prods. Co.,* 473 U.S. 568, 588, 592 (1985) (determining
no encroachment on judicial powers when Congress creates
"right" and decides on method for protecting it so long as
review of constitutional error is not obstructed). In so doing, the
Legislature is defining public policy (namely, determining that
it is in the public interest to retain certain teachers in the public
school system by providing some measure of job security subject
to certain limitations), which is a *legislative,* not judicial, func-

---

[9]The arbitrator's review is expressly limited to determining "whether the
district has proven grounds for dismissal." G. L. c. 71, § 42, fifth par.

tion. See *Geller, supra* at 248 (Cowin, J., dissenting). Thus, the legislative assignment of a teacher dismissal decision to a superintendent or principal does not amount to an impermissible delegation of *judicial* power. Further, the statute's provision of judicial review of the arbitrator's decision allows a court to be the final adjudicator of the dismissal dispute, thereby retaining judicial power within the judiciary.

We agree with the Superior Court judge that, in view of Atwater's arguments and the applicable law, our focus in this case is to determine whether the challenged provisions of the statute interfere or unduly restrict a core function of the judicial branch. We have emphasized, in the context of judicial power, that "[w]hat art. 30 forbids — 'the essence of what cannot be tolerated' — is legislative interference with the judiciary's core functions." *First Justice of the Bristol Div. of the Juvenile Court Dep't* v. *Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't*, 438 Mass. 387, 396 (2003) (*First Justice*), quoting *Chief Admin. Justice of the Trial Court* v. *Labor Relations Comm'n*, 404 Mass. 53, 56 (1989). "Prohibited as well is legislation that attempts to restrict or diminish those judicial powers that are necessary to the court's ability to perform its core judicial functions." *First Justice, supra*, and cases cited. Included in the scope of inherent judicial authority is the traditional adjudicatory power of the court to decide cases. *Id.* at 397. In the end, "[a]n act of one branch of government does not violate art. 30 unless the act 'unduly restrict[s]' a core function of a coordinate branch." *Commonwealth* v. *Gonsalves*, 432 Mass. 613, 619 (2000), *S.C.*, 437 Mass. 1020 (2002), and 441 Mass. 1007 (2004), quoting *Opinion of the Justices*, 372 Mass. 883, 892 (1977).

We conclude that the statute's provision authorizing arbitration of a principal's or superintendent's dismissal decision does not interfere with core judicial functions. The provision of professional teacher status, together with a limitation of grounds for dismissal, and provision of authority on principals and superintendents to render dismissal decisions, as well as arbitral review of such decisions, are, as we previously stated, matters of legislative judgment. These aspects of the statute do not implicate or interfere with core judicial functions. Further, the

statute's provision of judicial review of the arbitrator's decision enables a judicial function, albeit a limited one.

We reject Atwater's contention that the statute denies meaningful judicial review of such a nature as to render it unconstitutional under art. 30. Atwater correctly notes that the scope of judicial review in the statute is limited to that set forth in G. L. c. 150C, § 11. See G. L. c. 71, § 42, sixth par. As we have stated, where a teacher's right to continued employment is created by statute, the Legislature permissibly may require arbitration as the method of dispute resolution where a teacher is dismissed and chooses to review the dismissal decision. So too may the Legislature provide for limited judicial review of an arbitrator's decision. As noted by Justice Cordy, *Geller, supra* at 225 n.1 (Cordy, J., concurring), the changes to the dismissal process for teachers with professional teacher status reflect a legislative judgment that it was in the public interest to "depoliticiz[e] and streamlin[e] the dismissal process by requiring that contested dismissals proceed directly to arbitration, where timelines for decisions and detailed statements of supporting reasons are mandated [and to] provid[e] for limited rather than de novo review of dismissal decisions (as confirmed or not by arbitration) in the Superior Court." Contrary to Atwater's suggestion, the provision for judicial review, albeit limited, does not automatically equate with impermissible interference with a core function of the judiciary. Atwater asserts that because the judicial review afforded under the statute does not embody a determination that the arbitrator's decision was supported by substantial evidence, as with review pursuant to G. L. c. 30A, and insulates from review factual errors and errors in law, the judicial review is not meaningful and therefore violates art. 30. While these limitations exist, the judicial review expressly authorized permits a Superior Court judge to vacate an award on grounds of (1) corruption, fraud, or other undue means; (2) an arbitrator's evident partiality, corruption, or misconduct; (3) an arbitrator's having exceeded his powers or rendered an award compelling a violation of law; (4) an arbitrator's refusal of justified postponement or to hear material evidence; and (5) the absence of an arbitration agreement when duly raised by a party. See G. L. c. 150C, § 11 (*a*). In addition, where the source of authority to arbitrate

a dismissal decision is a statute, and not an agreement, judicial review of an arbitrator's interpretation of the meaning of the authorizing statute, here G. L. c. 71, § 42, and the scope of his or her authority thereunder, is broader and less deferential than in cases involving judicial review of an arbitrator's decision relating to similar issues arising out of an agreement between the parties. See *Geller, supra* at 229 (Cordy, J., concurring). Further, we may always review an arbitrator's award for a violation of public policy. See *id.* at 237-238 (Ireland, J., concurring), and cases cited. Last, where a teacher possesses a protected property interest in continued employment, the teacher's dismissal may be reviewed by a court for a claim of violation of due process or other constitutional error. See *Thomas* v. *Union Carbide Agric. Prods. Co., supra*; *Bielawski* v. *Personnel Adm'r of the Div. of Personnel Admin.*, 422 Mass. 459, 466 & n.15 (1996). In view of these provisions and safeguards, we conclude that the scope of judicial review set forth in the statute does provide for meaningful judicial review such that there is no art. 30 violation.[10]

4. *Challenges to the arbitration award.* a. *Arguments concerning counts I and II of Atwater's complaint.* In counts I and II of his complaint, Atwater alleges that the arbitrator, acting in excess of authority and in manifest disregard of the law, conducted the arbitration hearing using an incorrect legal standard. He contends that the Superior Court judge therefore should have vacated the arbitration award. We disagree.

In support of his claims, Atwater parses out three sentences in a ninety-nine page decision in which the arbitrator "fram[ed]"

---

[10]In support of his arguments Atwater cites to *Board of Educ. of Carlsbad Mun. Sch.* v. *Harrell*, 118 N.M. 470 (1994) (*Harrell*). In *Harrell*, a discharged superintendent challenged a New Mexico statute that mandated arbitration as the exclusive method to challenge the discharge, followed by judicial review to determine whether the arbitrator's decision "was procured by corruption, fraud, deception or collusion." *Id.* at 473-474, 475. The court concluded that the statute's limited judicial review provision did not provide meaningful judicial review of an arbitrator's decision and therefore, based on "due process, together with separation of powers considerations," was unconstitutional. *Id.* at 485. Atwater's reliance on the *Harrell* decision is misplaced. The judicial review component of the statute challenged in *Harrell* provided for significantly narrower judicial review than what is afforded by G. L. c. 150C, § 11, and our case law. In addition, the court's analysis took into account due process considerations which are not before us, see note 7, *supra.*

the issue as being whether the district violated G. L. c. 71, § 42, in dismissing Atwater. Atwater asserts that the arbitrator's incorrect framing of the issue "resulted in the compilation of a record replete with immaterial and prejudicial evidence and the rendering of an 'award' that is insufficient." Although the issue before the arbitrator could have been framed in more expansive terms, the content of the arbitrator's decision shows that, as implicated by the parties' arguments, she applied the correct statutory standard and properly considered, as required by the statute, whether the district (superintendent) followed the procedures called for in the statute, see G. L. c. 71, § 42, second par., in dismissing Atwater; and whether the district satisfied its burden of proof, *id.* at § 42, fifth par., namely, that the evidence established the charges brought against Atwater (here, conduct unbecoming a teacher). In addition, the arbitrator properly (and expressly) considered the directive in the statute to take into account, in determining whether the district proved grounds for dismissal, "the best interests of the pupils in the district and the need for elevation of performance standards." *Id.*[11]

Contrary to Atwater's contention, there was no "pervasive unfairness" inherent in the arbitrator's consideration of the investigation conducted by the superintendent. During the arbitration, Atwater challenged the superintendent's investigation as flawed, fundamentally unfair, and conducted with evident partiality. The arbitrator merely addressed these assertions. The "multi-level hearsay" admitted at the arbitration hearing properly was considered by the arbitrator with respect to whether (1) the superintendent conducted a full and fair investigation; and (2) based on the information before the superintendent, his decision to impose disciplinary action against Atwater was warranted. Atwater's argument that the arbitrator unfairly misused an affidavit executed

---

[11]The arbitrator interpreted G. L. c. 71, § 42, as Justice Cowin had, *Geller, supra* at 241 (Cowin, J., dissenting), as authorizing her to determine "both whether the grounds [for dismissal] alleged by the school district have occurred and, if so, whether such grounds warrant dismissal." This interpretation contrasts with that set forth by Justice Cordy, which suggests that "when an agreement specifically enumerates grounds for dismissal, the arbitrator does not have the authority to judge whether discharge is an excessive penalty for the violation committed." *Id.* at 232 (Cordy, J., concurring). Because the arbitrator upheld the discipline imposed by the district, we need not revisit this issue unresolved in *Geller.*

by him is belied by the record. The arbitrator did not admit this document for its truth because she "had . . . serious concerns about the manner in which it was obtained and the truthfulness of some of the statements in it." The document was admitted for a limited purpose: to show what the superintendent had relied on when deciding whether to impose discipline on Atwater. The judge properly concluded that the arbitrator did not exceed her authority or act in manifest disregard of the law.

b. *Arguments concerning count III of Atwater's complaint.* Atwater maintains that, as set forth in count III of his complaint, the arbitration award should be vacated because the arbitrator engaged in misconduct and exhibited bias, prejudicing Atwater by her attempt to mediate a settlement at the district's request, and by her refusal to recuse herself from conducting the arbitration after such mediation was unsuccessful. Pursuant to G. L. c. 150C, § 11 (*a*) (2), a Superior Court judge may vacate an arbitration award if "there was evident partiality by an arbitrator [or] corruption in any of the arbitrators, or misconduct prejudicing the rights of any party." Although Atwater asserts proper grounds under which an arbitration award may be vacated, we agree with the Superior Court judge that Atwater failed to present evidence sufficient to raise a genuine issue of material fact as to misconduct or bias on the part of the arbitrator, or as to prejudice to Atwater.

Contrary to Atwater's claim, the arbitrator did not conduct a mediation during her private meeting with Atwater and his counsel. After the parties had agreed (so that they possibly might reach a settlement), the arbitrator privately met with Atwater and his attorneys to tell them briefly her view of the case based on the evidence she had heard up to that point in time. The arbitrator made clear that she had formed a preliminary opinion that very well might change if additional evidence were presented. In addition, the arbitrator did not encourage Atwater to settle the matter or receive any information ex parte from Atwater or his attorneys. She did not thereafter provide the district with any information from the ex parte meeting. Atwater cites to no cases that such conduct amounts to mediation because it does not. "While it is better in most cases for arbitrators to be chary in expressing any opinion before they reach their ultimate

conclusion . . . it does not follow that such expressions are proof of bias." *Ballantine Books, Inc.* v. *Capital Distrib. Co.,* 302 F.2d 17, 21 (2d Cir. 1962). Here, the arbitrator's view derived only from the evidence she had already heard, and she expressly stated that she might change her mind depending on the remaining evidence in the case. There is no genuine issue as to bias. See *id.* ("It is to be expected that after a judge or an arbitrator has heard considerable testimony, he will have some view of the case. As long as that view is one which arises from the evidence and the conduct of the parties it cannot be fairly claimed that some expression of that view amounts to bias"). See also *Care & Protection of Martha,* 407 Mass. 319, 329 (1990) (for bias and prejudice to require disqualification, it must derive from extrajudicial source).

Turning to the issue of recusal, irrespective of the dispute concerning whether there was an agreement that, after the arbitrator expressed her view of the case she would recuse herself if requested by the parties,[12] the arbitrator made a decision not to recuse herself. Based on the record, this decision did not evidence any partiality or bias toward Atwater, constitute misconduct, or prejudice Atwater. As discussed above, the arbitrator merely gave her view of the case based on the evidence then before her, expressly qualified by her statement that her view might change on hearing additional evidence. In these circumstances, the arbitrator's decision not to recuse herself did not reasonably call into question her impartiality or prejudice Atwater. Cf. *Haddad* v. *Gonzalez,* 410 Mass. 855, 862-863 (1991) (explaining that when faced with question of capacity to rule fairly, judge must first consult his own emotions and conscience, and then attempt objective appraisal whether his impartiality might reasonably be questioned). See *Demoulas* v. *Demoulas Super Mkts., Inc.,* 428 Mass. 543, 552 (1998) (no error in denying recusal motion for alleged misconduct "where the defendants' affidavits taken at face value were insufficient to establish a reasonable basis for questioning the judge's impartiality").

What we have stated obviates the need to address any further

---

[12]The "dispute" here inevitably arose because there was no record made of the parties' agreement. The better course is to make a record of any agreement that arises during the course of arbitration, particularly when the circumstances presented are, as characterized by the arbitrator, "highly unusual."

arguments.[13] The arbitrator wrote a comprehensive decision that detailed the written and testimonial evidence before her, and then used that evidence to explain her extensive credibility determinations and ultimate conclusions. That Atwater would have preferred a different result on those determinations and conclusions is not a valid basis for us to vacate the award.

For these reasons, we conclude that the Superior Court judge ruled correctly on the summary judgment motions and correctly affirmed the arbitration award.

*Judgment affirmed.*

---

[13]In his brief, Atwater does not develop his "as applied" constitutional challenge to G. L. c. 71, § 42. Rather, in the summary of his argument he cites to various pages of his brief pertaining to his claims that the arbitrator applied the wrong statutory standard and that the proceedings conducted were pervasively unfair in support of his conclusory statement that the statute is unconstitutional as applied to him. Atwater's treatment of the issue does not rise to the level of acceptable appellate argument and is deemed waived. See Mass. R. A. P. 16 (a) (4); *Lobisser Bldg. Corp.* v. *Planning Bd. of Bellingham,* 454 Mass. 123, 134 n.15 (2009). Nevertheless, we point out that the Superior Court judge correctly decided the issue.

## NOTE.

The next page is purposely numbered 1001. The intervening page numbers were intentionally omitted in order to make it possible to publish this material with *permanent* page numbers, thus making official citations available upon publication of the preliminary prints of these Reports.