NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13428

COMMONWEALTH  vs.  KHALID KALILA.


Suffolk.     November 6, 2023. – March 13, 2024.

Present:  Gaziano, Lowy, Kafker, Wendlandt, & Georges, JJ.[1]


Practice, Criminal, Execution of sentence, Stay of proceedings,
     Affidavit.  Appeals Court, Appeal from order of single
     justice.



     Indictments found and returned in the Superior Court
Department on June 28, 2018.

     A motion for a stay of execution of sentence, filed on May
24, 2021, was heard by Michael D. Ricciuti, J., and a second
motion for a stay of execution of sentence was heard in the
Appeals Court by Kenneth V. Desmond, Jr., J.

     After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


     J.W. Carney, Jr., for the defendant.
     Darcy Jordan, Assistant District Attorney (Lynn Feigenbaum,
Assistant District Attorney, also present) for the Commonwealth.

---

     [1] Justice Lowy participated in the deliberation on this case
prior to his retirement.

GAZIANO, J. In this case, we review the decision of a single justice of the Appeals Court denying the defendant's motion to stay execution of his sentence pending the appeal from his convictions. The single justice upheld the decision of the trial judge (trial judge or judge), and concluded that although the defendant demonstrated a likelihood of success on his appeal, he was nonetheless a flight risk and a danger to others. In support of this conclusion, the single justice cited the defendant's connections and frequent travel to a foreign country as evidence that he was a flight risk. The single justice also cited the impulsive, racially motivated, and violent acts for which the defendant was convicted as evidence that he was a danger to others.

There is no dispute that the defendant established a reasonable likelihood of success on appeal. In fact, the defendant's direct appeal was successful, and his convictions have now been vacated. See Commonwealth v. Kalila, 103 Mass. App. Ct. 582, 583 (2023). Notwithstanding this determination, we discern no abuse of discretion in the single justice's denial of the defendant's motion to stay execution of his sentence. Applying the relevant factors, see Commonwealth v. Hodge (No. 1), 380 Mass. 851, 855-857 (1980), and Commonwealth v. Nash, 486 Mass. 394, 403 (2020), the single justice had an adequate basis to determine that the defendant posed an unacceptable security

risk.  Accordingly, we affirm the single justice's order denying the defendant's motion to stay his sentence pending appeal.

Background.  We set forth the facts as presented to the trial judge and single justice in connection with the motion to stay the defendant's sentence pending appeal.

The defendant was born in Morocco and lived there with his family until the age of fourteen.  He and his family then emigrated to the United States in 2003, where he since has resided.  The defendant routinely visits Morocco with his family and maintains dual citizenship with the United States and Morocco.  Indeed, the defendant's father resides in Morocco.

On January 30, 2018, the defendant and his brother were drinking to celebrate their spouses' just-announced pregnancies. The celebration ended at a restaurant and lounge in Boston, where the defendant had an altercation with another patron. Security personnel attempted to remove the defendant from the premises.  The defendant responded by striking one of the security personnel, who was Black, with a glass at least twice and yelling racial epithets.  The victim was taken to a hospital, where he required plastic surgery and more than seventy stiches.  As a result of his injuries, the victim continues to suffer from loss of vision, nerve damage, and permanent scarring.  The defendant subsequently was arrested by Boston police.

After his arrest, the defendant was released on $10,000 cash bail from the South Boston Division of the Boston Municipal Court Department. As a condition of his release, the defendant was ordered to have no contact with the victim and to refrain from visiting the restaurant where the altercation occurred. The defendant followed these conditions for the next three years. During this time, the defendant also remained gainfully employed and attended every court date.

In June 2018, a grand jury indicted the defendant for mayhem, G. L. c. 265, § 14; assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b); assault and battery by means of a dangerous weapon causing serious bodily injury, G. L. c. 265, § 15A (c) (i); and violation of constitutional rights with bodily injury, G. L. c. 265, § 37.

On May 10, 2021, empanelment for the defendant's trial commenced in the Superior Court. After four jurors had been seated, including a Black woman, two white women, and one white man, juror no. 32, a Black man, was called. During voir dire examination, juror no. 32 stated he would not weigh the testimony of a police officer differently from that of a civilian. The juror also stated that his mother worked as a civilian in internal affairs at Boston police department headquarters.

On completion of individual voir dire, the defendant exercised a peremptory challenge to remove juror no. 32 due to the juror's familial connection with the Boston police department.  The defendant did not challenge another juror who had a familial connection to the police.[2]  Nonetheless, the defendant argued that juror no. 32 should be dismissed because the defendant planned to challenge the testimony of two Boston police officers during trial.  The judge overruled the challenge, stating that while the defendant's reason was genuine, the defendant's proffered race-neutral explanation was inadequate.[3]

At trial, the defendant denied using racial epithets and claimed he acted in self-defense against the victim.  The jury rejected the defendant's testimony and returned verdicts of guilty on all four charged offenses.  The conviction of assault and battery by means of a dangerous weapon causing serious bodily injury ultimately was dismissed and vacated at the defendant's sentencing hearing.  The defendant was sentenced to

---

[2] In particular, juror no. 17, a white woman, had a father who was a former police officer.

[3] The judge further explained that he was overruling the defendant's objection because there was no reason why a Black juror should be challenged on the proffered grounds, where the juror credibly testified that he would not value a police officer's testimony differently from the testimony of another witness.

from three to four years in State prison for the mayhem conviction; one year in a house of correction for his conviction of violating constitutional rights with bodily injury, to be served from and after his State prison sentence; and two years of probation for his conviction of assault and battery by means of a dangerous weapon.

On May 24, 2021, the defendant filed a motion for a stay of execution of his sentence pending appeal pursuant to Mass. R. Crim. P. 31 (a), as appearing in 454 Mass. 1501 (2009). In his motion, the defendant argued that the judge's erroneous denial of his peremptory challenge against juror no. 32 created a strong likelihood that the defendant's conviction would be overturned and further argued that the defendant did not pose a security risk.

On June 14, 2021, the judge denied the defendant's motion in a written opinion. The judge found that even if an appellate court considered the denial of the defendant's peremptory strike "as based on genuineness rather than adequacy grounds, the defendant nonetheless has shown a likelihood of success of appeal." However, the judge also found that the defendant "present[ed] a profound risk of flight." The judge first noted the serious crimes for which the defendant had been convicted, which arose "from an extraordinarily violent and sudden attack in which [the defendant] seriously slashed the face of a [B]lack

bar employee with a shard of heavy glass while repeatedly threatening and hurling ugly racial epithets at the employee." The judge then found that the defendant's significant sentence created a compelling motive for the defendant to escape. Further, given that the jury rejected the defendant's exculpatory testimony as "incredible," the judge concluded that it was "impossible to rely on [the defendant's] representations that he will not seek to flee." Last, the judge found that the defendant was an "extreme risk of flight" due to his status as a dual citizen of the United States and Morocco, the time he had spent in Morocco, the presence of his father in Morocco, and the defendant's ability to access a foreign passport.[4]

The judge also inferred that the defendant was stockpiling funds that would provide him the financial ability to flee. In making this inference, the judge cited the defendant's payment of bail on the night of his arrest, regular employment, history of expensive foreign trips, and representation by private counsel.

Following the judge's denial, on July 30, 2021, the defendant filed a motion to stay with a single justice of the Appeals Court pursuant to Mass R. A. P. 6 (b), as appearing in

---

[4] Although the judge noted that the defendant's Moroccan passport currently was expired, he asserted that the defendant could replace the expired passport.

481 Mass. 1608 (2019). The single justice examined the judge's denial utilizing the test articulated in Nash, 486 Mass. at 403. Finding no abuse of discretion or error of law, the single justice denied the defendant's motion.

Specifically, the single justice concluded that, under the first Nash factor, the defendant presented "an issue which is worthy of presentation to an appellate court, one which offers some reasonable possibility of a successful decision in the appeal." Under the second Nash factor, the single justice held that the judge's finding that the defendant was a security risk was reasonable due to his extreme risk of flight and the danger he posed to others. The single justice reasoned that the defendant's flight risk was demonstrated by his dual citizenship and associated recurring travel to Morocco, the sentence that the defendant faced, the jury's rejection of the defendant's testimony at trial, and the seriousness of the crimes of which he was convicted. The single justice further reasoned that the defendant was a danger to others, as shown through his "convictions for impulsive, racially motivated, and violent acts." Last, after exercising his independent review and discretion, the single justice reached the same conclusions as the judge.[5]

---

[5] The single justice also addressed the third Nash factor sua sponte. He "conclude[d] that the health risks to the

The defendant appealed from the single justice's order to a full panel of the Appeals Court. The Appeals Court affirmed the single justice's order denying the defendant's motion for a stay. See Commonwealth v. Kalila, 102 Mass. App. Ct. 108, 120 (2023). After concluding that the first Nash factor was not at issue, the Appeals Court focused on the second Nash factor -- whether the defendant posed a security risk. See id. at 112-113. While acknowledging that the judge may have "placed undue reliance on the fact that the defendant retained private counsel" to infer that the defendant had the financial ability to flee the country, the Appeals Court held that the single justice did not abuse his discretion. Id. at 116. The Appeals Court, in upholding the single justice's decision, cited the defendant's frequent travel to Morocco, his visits abroad to see his brother in Germany, his stable employment, and the judge's opportunity to assess the defendant's credibility firsthand. Id. at 115-116. The Appeals Court also held that, insofar as the single justice made an independent determination that the defendant posed a security risk, there likewise was no abuse of discretion. See id. at 120.

Meanwhile, the defendant had filed a direct appeal from his convictions to the Appeals Court. In his direct appeal, the

---

defendant do not outweigh the significant security risk the defendant would pose if released."

defendant argued that the judge's refusal to strike juror no. 32 constituted structural error. See Kalila, 103 Mass. App. Ct. at 583. As the defendant's direct appeal was pending, in May 2023, this court granted the defendant's application for further appellate review of the single justice's denial of the defendant's motion to stay. See 492 Mass. 1101 (2023). After oral arguments in the case before us, the Appeals Court, on November 30, 2023, issued a decision on the defendant's direct appeal, holding that the judge had erred in denying the defendant's peremptory challenge and vacating the defendant's convictions. See Kalila, supra.

Discussion. 1. Standard of review. We review the single justice's denial of the defendant's motion to stay for error of law or abuse of discretion. See Nash, 486 Mass. at 412, citing Hodge, 380 Mass. at 853. An abuse of discretion occurs when a judge makes a clear error in weighing the relevant factors such that the decision "falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). The role of an appellate court in this context is not to exercise our independent discretion but merely to review the correctness of the single justice's ruling. See Nash, supra at 412. We do not substitute our judgment for that of the single justice simply because we would have reached a different result. See Commonwealth v. Dilworth, 485 Mass. 1001, 1002 (2020). See

also L.L., supra, citing Bucchiere v. New England Tel. & Tel. Co., 396 Mass. 639, 641 (1986) ("it is plainly not an abuse of discretion simply because a reviewing court would have reached a different result").[6]

2. *The single justice's review of the trial judge's denial of the stay.* A judge evaluates two factors in deciding a defendant's request for a stay: (1) the defendant's likelihood of success on appeal and (2) certain security concerns. See Nash, 486 Mass. at 406.[7] The defendant has the burden to prove both factors by a preponderance of the evidence. See id. See

---

[6] In addition to challenging the single justice's decision on his motion to stay, the defendant asserts in passing that the single justice's decision amounts to impermissible discrimination based on the defendant's national origin. A conclusory two sentences in the defendant's brief, not accompanied by either legal argument or factual detail, is insufficient to rise to the level of appellate argument, and thus is deemed waived. See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019) (appellate issue must include rationale and legal authority). See also Atwater v. Commissioner of Educ., 460 Mass. 844, 853 n.8 (2011) (mere citation to article of Massachusetts Declaration of Rights without further development did not rise to level of acceptable appellate argument).

[7] Due to the "extraordinary" nature of the COVID-19 pandemic and the "fundamental change in circumstances" that it brought, including "the particular danger of transmission of the [COVID-19] virus to persons in custody who cannot realistically engage in social distancing," we adjusted the test to incorporate a third factor. Christie v. Commonwealth, 484 Mass. 397, 401-402 (2020). See Nash, 486 Mass. at 405. Under this third factor, judges consider pandemic-related health and safety risks to a defendant. See id. at 406. Here, the third Christie factor is not at issue.

also Care & Protection of Laura, 414 Mass. 788, 791 (1993), citing Bourjaily v. United States, 483 U.S. 171, 175-176 (1987) (preliminary questions of fact established by preponderance of evidence).

To meet the first factor, a defendant needs to show that he has presented an appealable issue "which is worthy of presentation to an appellate court [and] offers some reasonable possibility of a successful decision in the appeal." Nash, 486 Mass. at 403, quoting Commonwealth v. Levin, 7 Mass. App. Ct. 501, 503-504 (1979). As the first factor involves a "pure question of law or legal judgment," the single justice's decision on this factor receives no deference from a reviewing court. See Commonwealth v. Allen, 378 Mass. 489, 498 (1979), citing Levin, supra at 505. To establish a reasonable possibility of success, a defendant need not prove that his success on appeal is certain or "even more likely than not." Nash, supra at 404. The appeal, however, may not be frivolous. See Hodge, 380 Mass. at 587. Instead, the question to be answered on this first factor is whether the defendant has proved the existence of at least one appellate issue with "sufficient heft" that would provide an appellate court "pause." Nash, supra. The issue presented by the defendant must require legitimate evaluation, where both parties can find meaningful support for their position, and where the defendant would

receive a favorable outcome if he were successful. See id. In this case, as stated, there is no dispute that the defendant has presented an appellate issue of "sufficient heft." See id.

Under the second factor, to determine whether a defendant poses a security risk, a judge must weigh considerations such as "the possibility of flight to avoid punishment; potential danger to any other person or to the community; and the likelihood of further criminal acts during the pendency of the appeal." Nash, 486 Mass. at 405, quoting Hodge, 380 Mass. at 855. See Christie v. Commonwealth, 484 Mass. 397, 401 (2020) (judges should consider "the danger to other persons and the community arising from the defendant's risk of reoffense"); Levin, 7 Mass. App. Ct at 505 (weighing considerations such as possibility of flight and further criminal acts, familial status, roots in community, employment, prior criminal record, and demeanor). While the first factor is a question of law, the second factor presents a question of fact. Nash, supra, citing Levin, supra. Judges have "considerable leeway" in determining this second factor. Nash, supra.

Here, the single justice detailed various considerations that supported the judge's conclusion that the defendant was a flight risk, including the defendant's dual citizenship and frequent travel to his country of origin, the serious crimes of which the defendant was convicted, the significant sentence that

the defendant had begun to serve, and the jury's rejection of the defendant's testimony at trial and its effect on his credibility.  The single justice also emphasized that the defendant's convictions were based on "impulsive, racially motivated, and violent acts," demonstrating a potential danger to others.  At the same time, the single justice also noted considerations that weighed in the defendant's favor, such as the defendant's minimal criminal history, community support, and compliance with conditions of pretrial release.  Ultimately, the single justice held that, even accounting for mitigating factors, it was not "outside the range of reasonable alternatives" for the judge to find that the defendant constituted a security risk.  See L.L., 470 Mass. at 185 n.27.

On appeal, the defendant argues that the single justice abused his discretion when he endorsed the judge's "speculation" that the defendant has the means, both financially and through his support network, to flee the country.  Specifically, the defendant claims that the considerations on which the judge relied in reaching these inferences, including the defendant's steady employment, his strong family support, his posting of $10,000 bail on the night of his arrest, and his hiring of private counsel, were improper.[8]

---

[8] The defendant also asserts that the judge and the single justice appear to have presumed, in error, that the defendant

A judge properly may consider a defendant's financial resources in evaluating whether he is a flight risk.  See Brangan v. Commonwealth, 477 Mass. 691, 693 (2017) (judge "must consider a defendant's financial resources" in setting amount of bail under G. L. c. 276, § 58); Allen, 378 Mass. at 498 (factors used to govern bail before trial "may properly be considered" in deciding motion to stay).  Here, the judge referenced financial resources in rejecting the defendant's motion for a stay.  Specifically, the judge wrote:

> "At argument, the court expressed to Kalila's counsel that the release terms the defense proposed -- [global positioning system monitoring], a curfew[,] and $10,000 bail (the amount Kalila originally posted) -- were inadequate, but counsel offered nothing to supplement them.  That was troubling; Kalila posted $10,000 bail on the night of his arrest, has been regularly employed in a management job . . . , has a history of regularly taking expensive foreign trips, and is represented by private counsel, all of which suggests that Kalila has access to significant financial resources to make good on flight, but offered none to further secure his release.  That he may be conserving funds to flee is thus a serious risk."

In doing so, the judge did not consider merely the defendant's actual financial resources as permitted by law.  Instead, he found "troubling" that the defendant posted bail on

---

could not be extradited from Morocco to the United States.  However, this rationale does not feature in either the judge's or the single justice's written decisions.  In any event, whether the defendant could be extradited after he already fled bears little, if any, weight in the determination whether the defendant may flee in the first place.

the night of his arrest, maintained regular employment, had a history of foreign trips, and retained private counsel yet offered no additional funds in seeking his motion for a stay. It was error for the judge to use all of this information to speculate that the defendant was stockpiling funds to flee.

However, the single justice did not endorse these considerations. In fact, these considerations do not appear in the single justice's written opinion. The single justice's stated reasons -- including the defendant's dual citizenship, recurring trips abroad, "impulsive, racially motivated, and violent acts," and lack of credibility at trial -- were all proper and, when taken together, sufficient to find that the defendant constituted a security risk. We thus conclude that the single justice did not abuse his discretion. See L.L., 470 Mass. at 158 n.27.

The defendant also argues that his strong likelihood of success on appeal should be considered in assessing whether he constitutes a security risk. Specifically, the defendant asserts that "[t]he single justice abused his discretion here by failing to weigh the strength of the defendant's appeal under factor 1 and its bearing on the defendant's flight risk under factor 2." This is not the proper analysis for these two factors.

As recognized by the Appeals Court, Nash did not "signal[] a new approach to the traditional two-factor test." Kalila, 102 Mass. App. Ct. at 113. In Nash, 486 Mass. at 407 n.17, we noted that judges may consider the totality of the circumstances in weighing a third factor against the other two factors if it serves the ultimate objective underlying that third factor -- to "safely and responsibly manag[e] confinements pending appeal for the duration of the pandemic." The creation of a third factor, however, was not intended to modify the way judges should assess the first two factors in all cases going forward. The third factor is unique from the other factors in both its purpose and application. It was created in response to the "extraordinary times" of the COVID-19 pandemic. See note 7, supra; Christie, 484 Mass. at 401. See also Nash, supra at 396 ("we held that the pandemic is a factor for judges to consider when ruling on requests for stay"). Our approval of a totality of the circumstances test was likewise an extraordinary measure for extraordinary times.

A judge evaluating a motion to stay thus has two distinct factors to consider, as stated supra: (1) the likelihood of success on appeal, and (2) certain security concerns, such as possibility of flight and potential danger to the community. See Nash, 486 Mass. at 406 ("Under the traditional, pre-pandemic standard for determining motions to stay, . . . a defendant

bears the burden of proving two factors -- likelihood of success on appeal and security -- in order to prevail").  If, after examining the first factor, the answer to that threshold question is yes, then the judge should proceed to an examination of the second factor; if the answer is no, the motion to stay is denied.

Nonetheless, the defendant here asserts that the type of error involved in his underlying appeal -- structural error -- makes the defendant less of a security concern because it requires reversal without a need to demonstrate prejudice.  See Commonwealth v. Oberle, 476 Mass. 539, 545 (2017).  We are not convinced for two reasons.  To begin with, the defendant's best outcome from his appeal is a new trial.  The possibility of a conviction after the defendant's new trial certainly is not remote.  A prior jury, in convicting the defendant of all charges, rejected the defendant's claims that he did not use racial epithets and acted in self-defense.  We therefore agree with the Appeals Court that "the nature of the error gives [the defendant] no reasonable expectation of an acquittal -- or any less incentive to flee."  Kalila, 102 Mass. App. Ct. at 118.[9]

_____

[9] This reasoning, of course, is not applicable to appeals challenging the sufficiency of evidence or other issues resulting in acquittal.  See Kalila, 102 Mass. App. Ct. at 117. That issue is not raised in this case, and we need not reach it.

Next, the second Nash factor requires judges to consider the danger a defendant poses to the community. See Nash, 486 Mass. at 405. The nature of the error underlying the appeal here does not make the defendant any less dangerous.

Based on the foregoing, the single justice did not abuse his discretion in concluding that the judge likewise did not abuse his discretion.

3. The single justice's independent determination. A single justice has the option to review a judge's denial of a motion to stay in two ways. Nash, 486 Mass. at 410. Either the single justice may review the matter for an error of law or abuse of discretion, or the single justice may review it anew. See id. (reviewing motion anew provides defendant with "a second bite at the apple"). It is not uncommon for a single justice to review a judge's decision under both methods. See id. at 410-411. Here, the single justice stated, at the end of his decision, that, "after exercising [his] independent review and discretion, [he] reach[ed] the same conclusion [as the judge]." Having analyzed the single justice's appellate review of the judge's decision, we now analyze the single justice's decision as if he made it anew.

For purposes of our analysis, there is only one noteworthy difference between the single justice's review of the judge's decision and the single justice's independent determination.

The single justice had two additional pieces of evidence before him that the judge did not:  an affidavit of the defendant's wife in which she asserts that the financial resources of the defendant's family are limited and an affidavit of the defendant's brother in which he states that their father did not live in Morocco full time.  Neither affidavit is sufficient to render the single justice's decision denying the motion to stay unreasonable, given the single justice's stated reasons for finding that the defendant constituted a security risk -- the defendant's dual citizenship status and associated travel, the jury's determination that the defendant was not credible, and the serious and impulsive nature of the crime of which the defendant was convicted.  See Nash, 486 Mass. at 405 (judge has "considerable leeway" in determining second factor).  We thus conclude that the single justice did not abuse his discretion insofar as he engaged in any independent review of the defendant's motion.

Conclusion.  For the reasons discussed, we conclude that the single justice did not commit an abuse of discretion by denying the defendant's motion to stay the execution of his sentence pending appeal.  Accordingly, we affirm the single justice's order denying that motion.

So ordered.