NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-350                                          Appeals Court

DANIEL CONWAY  vs.  CLC BIO, LLC.

No. 14-P-350.

Middlesex.     December 10, 2014. - June 12, 2015.

Present:  Kantrowitz, Green, & Sullivan, JJ.

Arbitration, Judicial review, Award, Authority of
     arbitrator.  Massachusetts Wage Act.

Civil action commenced in the Superior Court Department on
February 17, 2012.

A motion to vacate an arbitration award was heard
by Douglas H. Wilkins, J., and judgment was entered by him.

David B. Summer for the plaintiff.
Michelle Y. Bush for the defendant.

SULLIVAN, J.  The plaintiff, Daniel Conway (Conway),

appeals from the denial of his motion to vacate an arbitration

award, see G. L. c. 251, § 12, concerning a claim for unpaid

wages under The Wage Act.  See G. L. c. 149, §§ 148, 150 as

amended by St. 2009.  We affirm, and in so doing, reiterate the

standard of review applicable to complaints to vacate a commercial arbitration award.

Background. To place our discussion in context, we set forth the facts found by and rationale of the arbitrator. Conway was employed by the defendant, CLC Bio, LLC (CLC), a bioinformatics company, from October, 2007, until his termination in January, 2012. Conway's employment at CLC was governed by an employment contract that provided for his base salary and potential bonus payments or commissions.[1] The contract also contained an arbitration clause that mandated arbitration of "any dispute or controversy arising out of or relating in any way to [Conway's] employment with and/ or termination from [CLC]."[2]

---

[1] The commissions clause provided that "[CLC] shall pay [Conway] a commission as set forth in Appendix A, which is attached hereto and hereby incorporated by reference. [Conway's] commission shall be deemed to have been earned by [him] and owing by [CLC] when the invoice applicable to the specific products and services sold has been paid in full by the customer."

[2] The arbitration clause of Conway's contract provided in part:

> "The Employee agrees that any dispute or controversy arising out of or relating in any way to the Employee's employment with and/ or termination from the Company (including, but not limited to, all claims, demands or actions under any federal, state or local statute or regulation regarding employment discrimination, and/or all claims, demands or actions concerning the interpretation, construction, performance or breach of this Agreement) shall be settled by arbitration held in Boston,

Conway's employment at CLC was terminated on January 12, 2012. On January 18, 2012, CLC sent Conway a letter offering to pay severance and outstanding bonus payments to Conway in exchange for a release of claims. Conway failed to respond, but CLC tendered $30,325 in bonus payments to Conway on March 1, 2012, payments which included a $10,990 Individual Sales Bonus (ISB). In the interim, on February 17, 2012, Conway filed a complaint against CLC in a Superior Court, alleging breach of contract, breach of the covenant of good faith and fair dealing, and violations of the Wage Act stemming from claims for severance pay, unpaid vacation time, and future and late-paid commissions. CLC moved to stay the proceedings and compel arbitration pursuant to the arbitration provision in Conway's employment contract. See G. L. c. 251, § 1, as appearing in St. 1991, c. 398, § 96. The motion judge granted CLC's motion and the parties proceeded to arbitration.

In arbitration Conway claimed, among other things, that CLC violated the Wage Act by failing to effectuate payment of the ISB on the date of his termination. See G. L. c. 149, § 148. The arbitrator found that the ISB, despite being called a

Massachusetts, in accordance with the Rules of the American Arbitration Association, before an arbitrator who shall have experience in the area of the matter in dispute. Each party shall bear its own costs and attorneys' fees in connection with any arbitration pursuant to this paragraph."

"bonus," was in fact a commission subject to the protections of the Wage Act. She concluded, however, that the ISB did not become "definitely determined" and "due and payable", see G. L. c. 149, § 149, until the end of February, 2012, rather than the date of Conway's termination, because the employment contract provided that ISB commissions were to be paid to employees only when the corresponding sales were paid in full by the customers.[3] The arbitrator found that CLC would have tendered the ISB payment well before the end of February, 2012, if Conway had not failed to respond to CLC's January 18, 2012, offer letter before initiating formal litigation. The arbitrator concluded that the delay in payment of the ISB until March 1, 2012, was not wholly attributable to CLC and was, therefore, not a violation of the Wage Act.

Conway subsequently filed a motion to vacate the arbitrator's award in the Superior Court, disputing only the arbitrator's determination regarding the ISB. Conway contended that the arbitrator exceeded her authority in failing to find a violation of the Wage Act, and that the arbitrator's conclusion to the contrary was not in accordance with the law. A judge of

---

[3] The statute provides in relevant part: "[t]his section shall apply . . . to the payment of commissions when the amount of such commission less allowable or authorized deductions, has become definitely determined and has become due and payable to said employee, and commissions so determined and due such employees shall be subject to the provisions of Section one hundred and fifty." G. L. c. 149, § 148.

the Superior Court confirmed the arbitration award, and dismissed Conway's complaint with prejudice.

Discussion.  There is a "strong public policy" favoring arbitration of commercial disputes.  Connecticut Valley Sanitary Waste Disposal, Inc. v. Zielinski, 436 Mass. 263, 267 (2002) (citation omitted).  Commercial arbitration awards, such as the one at issue here, are subject to a narrow scope of judicial review.  See G. L. c. 251, § 12; Superadio L.P. v. Winstar Radio Prods., LLC, 446 Mass. 330, 333 (2006).

Absent fraud, corruption, or other undue means in the procurement of the agreement to arbitrate or a showing that the award is otherwise void or voidable, an arbitrator's award is binding.  Id. at 336-337.  McInnes v. LPL Financial, LLC, 466 Mass. 256, 262-263 (2013).  An arbitrator's findings of fact and conclusions of law are binding even if erroneous.  Boston Water Power Co. v. Gray, 6 Met. 131, 181 (1843).  Jones v. Boston Mill Corp., 6 Pick. 148, 156 (1828).  Trustees of the Boston & Me. Corp. v. Massachusetts Bay Transp. Authy., 363 Mass. 386, 390 (1973).  Dane v. Aetna Cas. & Sur. Co., 369 Mass. 966, 967 (1976) (Dane).  However, an arbitrator's award may be vacated if the arbitrator exceeded her authority.  See G. L. c. 251, § 12(a)(3); Superadio L.P., supra at 334.

Conway's assertion that the arbitrator exceeded her authority is misdirected.  An arbitrator exceeds her authority

if she awards relief beyond the scope of the arbitration agreement, beyond that to which the parties bound themselves, or enters an award prohibited by law. Superadio, supra. "The fact that an arbitrator [may have] committed an error of law does not alone mean that [s]he has exceeded [her] authority." City of Boston v. Professional Staff Assn., 61 Mass. App. Ct. 105, 112 (2004) (quotation omitted). Conway's employment contract expressly provided the arbitrator with the authority to arbitrate any "dispute or controversy arising out of or relating in any way to the Employee's employment with and/ or termination from the Company." See n.2. This arbitration clause, which expressly referenced statutory claims, is sufficiently broad to encompass both contractual and statutory claims. See Joulé, Inc. v. Simmons, 459 Mass. 88 (2011); Dixon v. Perry & Slesnick, P.C., 75 Mass. App. Ct. 271, 278 (2009); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) (Gilmer).[4,5]

---

[4] Gilmer was decided under the provisions of the Federal Arbitration Act, (FAA) 9 U.S.C. § 1, et seq. (2006) (FAA), which governs agreements to arbitrate in interstate commerce, and supersedes State law to the contrary. See infra.

[5] Agreements to arbitrate implicate a number of State and Federal statutes in addition to the FAA. Enforcement of arbitration awards arising under private sector collective bargaining agreements involving companies in interstate commerce are governed by § 301 of the National Labor Relations Act, as amended, 29 U.S.C. § 185 (1952) (NLRA). The State court has concurrent jurisdiction to enforce awards governed by § 301 of the NLRA. Morceau v. Gould-National Batteries, Inc., 344 Mass. 120, 123-124 (1962), citing Charles Dowd Box Co., Inc. v.

Contrast Warfield v. Beth Israel Deaconess Med. Ctr., Inc., 454 Mass. 390 (2009). Conway's "only contention that the arbitrator exceeded his power is in substance a claim that the arbitrator committed an error of law," and is not subject to judicial review. Dane, supra.[6]

Conway relies on cases decided under the statutory arbitration provisions of the Education Reform Act of 1993, G. L. c. 71, § 42 (Reform Act), in support of his contention that the court is nonetheless authorized to review the award for errors of law based on a violation of statute. Arbitration cases arising under § 42 of the Reform Act involving terminated teachers with professional teacher status are inapposite in this respect. Arbitration of these cases under § 42 of the Reform Act is a creature of statute. In these cases, both the scope of

---

Courtney, 368 U.S. 502 (1962) (affirming Courtney v. Charles Dowd Box Co., Inc., 341 Mass. 337 [1960]). G. L. c. 150C is the State statute which also governs the enforceability of both public and private sector collectively bargained agreements to arbitrate, except as otherwise provided by the Education Reform Act of 1993, G. L. c. 71, § 42. The statute at issue here, G. L. c. 251, § 1, as appearing in St. 1991, c. 398, § 96, governs other agreements to arbitrate in the Commonwealth.

[6] The same rule applies to review of arbitration awards under public sector collective bargaining agreements (other than those governed by the statutory arbitration provisions Education Reform Act of 1993, G. L. c. 71, § 42, see infra,) and private sector collective bargaining agreements. See Lynn v. Thompson, 435 Mass. 54, 61-62 (2001), cert. denied, 534 U.S. 1131 (2002) (interpreting G. L. c. 150C, § 11); United States of America v. Enterprise Wheel and Car Corp., 363 U.S. 593 (1960); Greene v. Mari & Sons Flooring Co., Inc., 362 Mass. 560, 563 (1972) (interpreting 29 U.S.C. § 301, and G. L. c. 150C, respectively).

statutory arbitration and the arbitrator's authority are delimited by the Reform Act.  As the Supreme Judicial Court has recently explained, "judicial review of an arbitrator's interpretation of [an] authorizing statute . . . is 'broader and less deferential' than in cases of judicial review of an arbitrator's decision arising from an interpretation of a private agreement."  School Comm. of Lexington v. Zagaeski, 469 Mass. 104, 112 (2014), quoting from Atwater v. Commissioner of Educ., 460 Mass. 844, 856-857 (2011).  In the case of statutory arbitration under § 42 of the Reform Act, where the source and scope of an arbitrator's authority is defined by statute, a court is "better position[ed]" to interpret the scope of the arbitrator's authority granted by the authorizing statute and is thus empowered to vacate an arbitration award if the arbitrator has exceeded his statutory authority.  School Dist. of Beverly v. Geller, 435 Mass. 223, 229-230 (2001) (Cordy, J., concurring) (Geller).[7]

By contrast, in cases where the source and scope of the arbitrator's authority emanate from a commercial agreement to

---

[7] In other respects, the standard of review of arbitration awards under the Reform Act is the same.  That is, absent a showing that the arbitrator exceeded her authority, "a reviewing court is 'strictly bound by the arbitrator's factual findings and conclusions of law, even if they are in error.'"  School Comm. of Marshfield v. Marshfield Educ. Assoc., 84 Mass. App. Ct. 743, 752 (2014), quoting from School Comm. of Lowell v. Robishaw, 456 Mass. 653, 660 (2010) (citations omitted).

arbitrate claims, including statutory claims, the arbitrator is fully "empowered to interpret the underlying contract and the extent of [her] powers thereunder." Geller, supra at 229 (Cordy, J., concurring). Judicial review is therefore highly limited. Review for error of law or fact is precluded, unless the arbitrator has otherwise exceeded her authority by exceeding the scope of the agreement to arbitrate, or issuing an award which violates public policy. See Superadio, 446 Mass. at 330, 334; School Comm. of Lexington v. Zagaeski, supra at 112.

Conway contends that this result is contrary to public policy to the extent that it consigns the enforcement of statutes (like the Wage Act) which are meant to benefit the public as a whole, to private, unreported, unreviewable, standardless adjudication. We are foreclosed from considering this contention, which has been rejected in a series of cases beginning with Gilmer, supra, and culminating most recently in American Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304 (2013) (Amex), enforcing private agreements to arbitrate. See Feeney v. Dell, Inc., 466 Mass. 1001 (2013); McInnes v. LPL Financial, LLC, 466 Mass. 256, 261-263 (2013). A private agreement to arbitrate in a contract in interstate commerce is governed by the Federal Arbitration Act, (FAA) 9 U.S.C. § 1 et seq. (2006) (FAA), which supersedes State law that conflicts with its terms. McInnes, supra at 264. Preston v. Ferrer, 552

U.S. 346 (2008). "In all relevant respects, the language of the FAA and [G. L. c. 251. § § 2 & 12] providing for enforcement of arbitration provisions are similar, and we have interpreted the cognate provisions in the same manner." Warfield, supra at 394. Under the FAA, absent a question of arbitrability, countervailing Congressional command, or cognizable challenge to the validity of the agreement to arbitrate, an agreement to arbitrate statutory claims must be enforced. 9 U.S.C. §§ 2, 10 & 11. Amex, supra. Gilmer, supra. Any attempt to refashion our State law to permit de novo review of commercial arbitration awards involving statutory claims would run afoul of the FAA, which also prohibits review of an arbitrator's findings of fact and rulings of law, so long the arbitrator does not otherwise exceed her authority.[8] See 9 U.S.C. § 10(a)(4); Hall St. Assocs. LLC v. Mattel, Inc., 552 U.S. 576 (2008); Oxford Health Plans LLC v. Sutter, 133 S.Ct. 2064, 2070 (2013). See also Wilko v. Swan, 346 U.S. 427 (1953), abrogated on other grounds

---

[8] Other grounds for vacating an award under the FAA include corruption, fraud, undue means, or misconduct. 9 U.S.C. § 10(a). Similar grounds are set forth in G. L. c. 251, § 12. We need not address whether "manifest disregard" for the law remains a non-statutory grounds for vacatur under the FAA, see Citigroup Global Mkts., Inc. v. Bacon, 562 F.3d 349 (5th Cir. 2009) (and cases cited), discussing Hall St. Assocs., LLC v. Mattel, Inc., 128 S. Ct. 1396 (2008), since the claims made here do not rise to the level of "manifest disregard," however that term has been defined.

by Rodriguez de Quijas v. Shearson/Am. Exp., Inc., 490 U.S. 477 (1989).

The judgment confirming the arbitration award and dismissing the complaint is affirmed.

So ordered.